SHOWALTER *et al.*

*v.*

HAMBRICK *et al.*

*(Supreme Court of Appeals of Virginia, July 16, 1896.)*

[25 S. E. Rep. 102.]

#### Specific Performance—Laches of Complainant.

Specific performance of a contract to convey land, brought by one who has been for 30 years in possession of the land under the contract, will not be enforced, where the evidence shows that the consideration for the conveyance has never been paid.

Appeal from circuit court, Floyd county ; Henry E. Blair, Judge.

Bill in equity by William J. Hambrick and others against H. B. Showalter and others. Decree for complainants, and defendants appeal. Reversed.

*Phlegar & Johnson*, for appellants.

*J. L. Tompkins* and *J. C. Wysor*, for appellees.

CARDWELL, J., delivered the opinion of the court.

The appellees filed their bill in the circuit court of Floyd county to compel the specific performance of a contract for the sale of a certain tract of land in that county, made in the year 1865 or 1866, whereby H. B. Showalter sold to George Hambrick, one of the appellees, the tract of land in question, at the price of $120, and the latter was put in possession of

the land at or about the time of the alleged contract, and remained in possession thereof until some time in the year 1891, when he gave a title bond therefor to his three sons, William J., J. C., and G. E. Hambrick, who are also appellees ; the bond bearing date June 1, 1891, and recorded September 17, 1891. The bill does not appear in the record, but, from the affidavit setting it up as a lost paper, it did not set out clearly the provisions of the contract, but stated that Showalter never delivered to Hambrick any deed, title bond, or other title papers for the land that the latter could place on record, and further set forth that Showalter had on the 7th day of September, 1891, executed to George E. Lester, one of the appellants, a title bond for 25 acres of the land alleged to have been purchased by Hambrick from Showalter in the year 1865 or 1866, and that on the 15th of April, 1892, Showalter executed to one J. S. Lawson a title bond conditioned to convey to Lawson 5½ acres of land when the purchase price therein named was paid, and that afterwards Lawson sold this parcel of land to Lester, who claims title now to the land embraced in the contract alleged to have been made between Showalter and Hambrick. Upon the hearing of the cause in the court below on the bill and exhibits, the separate demurrer and answer of Showalter and Lester, and the depositions taken for both plaintiffs and defendants, the court overruled the demurrer, and decided that the contract between Showalter and Hambrick, made, as alleged in 1865 or 1866, was a written contract; that George Hambrick had paid Showalter therefor ; that he was entitled to a deed of conveyance,—and directed a commissioner to convey the land in question to J. C., W. J., and G. E. Hambrick, the vendees of George Hambrick, reserving a lien for the unpaid purchase money due to the estate of George Hambrick, who had died after the institution of this suit. From this decree, Showalter and Lester obtained an appeal to this court.

That the court below correctly decided that there was a writ-

ten contract, or title bond, given by Showalter to Hambrick for the land in question, seems to be uncontroverted in the argument, and the decision on this appeal (the demurrer being waived) turns solely upon the question whether or not the court below was in error in holding that the purchase price for the land had been paid by Hambrick to Showalter. The answer of Showalter, read in connection with the answer of Lester, adopted by Showalter as his answer, admits that he sold, or agreed to sell, the land in question to George Hambrick, but insists that he gave to Hambrick a title bond therefor, conditioned to convey the land to him when he paid the purchase price, $120, to H. B. Dowler, to whom Showalter had theretofore given a deed of trust upon his land, which included the land that he (Showalter) had agreed to sell to Hambrick, and denies most emphatically that any part of the purchase money was ever paid by Hambrick. On the contrary, he sets forth that after waiting on Hambrick for many years to pay the purchase money to Dowler, and finding that he was unable to do so, he (Showalter) then paid off his indebtedness to Dowler, and obtained a release deed from him as to all the lands included in the trust deed. Whereupon he notified George Hambrick of this fact, and demanded to know of him what he proposed to do about the land, when Hambrick asked for time to pay the purchase money to him (Showalter), which was given him, and extended until he (Showalter), having become satisfied that he (Hambrick) could or would not pay for the land, sold it to Lester and Lawson.

The principal witnesses relied on by the plaintiffs in the lower court to prove that Hambrick had paid for the land are William J. Hambrick, his son, and one James Kirby, and these witnesses pretend to know what the contract was ; and, according to their testimony, the land was sold by parol agreement in 1865 or 1866 for $40 in cash, and a wagon, which, according to their statement, were paid and delivered,—the money when the trade was made, and the wagon in 1866 or 1867. It is true that one

other witness (Jacob Sumpter, a son-in-law of George Hambrick) testified that he heard Showalter promise to make a deed to George Hambrick for land which he (Sumpter) supposes was the land in controversy ; and another witness (Thomas Turpin) testified that H. B. Dowler told him that George Hambrick paid him $40 on the trust-deed debt.    But if the statement of Turpin be admitted, though clearly hearsay testimony, it can only serve to prove that the evidence of W. J. Hambrick and James Kirby as to a contract for $40 cash to Showalter, and a wagon, is not true.    It is admitted in the record that 10 witnesses testified that they would not believe Jacob Sumpter on oath, while 34 testified that they would ; but as this evidence, as we think, is completely overthrown by the testimony on behalf of the defendant Showalter, it is unnecessary to decide whether the testimony of this witness, Sumpter, is worthy of belief or not.    The evidence is overwhelming that the statements of Kirby are not to be relied on, and shows that it was impossible for him to have been present at the time and place when and at which he states that he witnessed the contract, and saw the money—the $40—paid, and knew that the wagon had been delivered.    His own evidence and that of J. C. Hambrick, a party interested, who attempts to bolster Kirby up in his statement that he lived with George Hambrick from 1865 or 1866 to 1868, is completely overthrown by four disinterested witnesses who prove that he was not at Hambrick's either of those years.    Mrs. Miller fixes his whereabouts in 1867 in Montgomery county, a considerable distance from Hambrick's, and where he had lived since some time in 1864, or the early part of 1865, and by facts which the witness Mrs. Miller most reasonably gave to show the correctness of her statement ; and she is borne out by other witnesses,—notably, John T. Shelburn, who moved Kirby, in the fall of 1865, to Bardshaw's Creek, and testifies that for the first three or four years after the war he was about George Hambrick's frequently, had hauled up and

down about Hambrick's every few days, and that Kirby did not live at or near Hambrick's Mill (at or near which George Hambrick lived) within three or four years after the close of the war.   It is needless, however, to pursue further a discussion of the testimony of the witnesses relied on to show that Hambrick had paid Showalter for the land, as the evidence to the contrary is quite conclusive, even if we omit from consideration the evidence of Showalter himself, which is objected to, but which objection, in the view we take of the case, it is unnecessary to pass upon.

F. A. Dowler, a brother of H. B. Dowler, who was examined as a witness for the defendant Showalter, was asked the following question :  "Did you have any transaction with said [George] Hambrick or Showalter for H. B. Dowler?   If so, state where and when, and what was it about."   And his answer was : "Yes ; I had a transaction with them both for H. B. Dowler in March, 1882, in Floyd county, Va.   H. B. Dowler held a deed of trust on certain land belonging to H. B. Showalter, to secure the said Dowler in a debt owing from him (said Showalter).   I, as attorney in fact for H. B. Dowler, in about March, 1882, went to see H. B. Showalter about payment of the debt ; but he did not pay me the money, but gave me an order to [George] Hambrick for $120, amount claimed by Showalter to be owing him from said Hambrick, and I went there and saw Mr. Hambrick.   He said he owed the money to Mr. Showalter, but that he did not then have it so that he could pay me." Then, in answer to other questions, this witness says that, when he took the order for $120 to Hambrick, he said he owed that amount to Showalter, and, as witness thought, said it was for land, and said he would pay the witness that amount, and offered to secure it by deed of trust on real estate, and wanted witness to release the deed of trust held by H. B. Dowler on the land of Showalter, and said that if he would do so he (Hambrick) would secure the $120 by other real estate.   Then,

in answer to the question, "State whether or not Hambrick claimed that he had paid for the land he had bought of Showalter," witness said, "He said he had not." An effort was made to show that in this conversation Hambrick had reference to money he owed Showalter on some other transaction, but the effort signally fails.

It seems that, as early as in 1871,—long after Hambrick's witnesses attempt to show that this money had been paid,—H. B. Dowler placed his claim in the hand of Mr. Trigg, a lawyer, who wrote to George Hambrick with regard to the money, and received from him a reply dated January 2, 1871, in which he says : "I will be sure to get some money next March for some land I sold last month, and I promised H. B. Showalter, some time back, to help him to * * * some money that he promised you, and I am disappointed, and will be sure to pay him $100 some time in March, 1871 ; and I will write to Dowler, and I think it will satisfy him." This letter is filed as an exhibit with the defendants' answer, and that it was written by George Hambrick is nowhere questioned. After Lester had purchased this land from Showalter, young Hambrick obtained a warrant against Lester for trespassing on the land, and a trial of this warrant was had ; and it is shown by the justices who tried the warrant, and whose depositions are taken in this cause, that at the trial neither George Hambrick, nor either of his sons to whom he had sold the land, claimed that the land had been paid for to Showalter, although Showalter made the statement that no part of the purchase money had been paid. Nathan Phillips, one of the justices, testified that he had a conversation with G. E. Hambrick a few days before the warrant trying, in which he (G. E. Hambrick) said : "We have not paid for the land, but don't say anything about it. We are going to hold it by possession. If we can't hold it that way, we are going to give Lester all the trouble we can. We don't propose for him to run us out like dogs." Then, on cross-ex-

amination, when the effort was being made to show that, when G. E. Hambrick spoke of the land not being paid for, he meant that he and his brother had not paid their father for it, the witness Phillips states emphatically that George Hambrick never claimed that he had paid for the land, and that in the conversation with G. E. Hambrick he mentioned his father, he mentioned the whole of them, he mentions his father with the boys, and when asked the direct question, "Are you positive that George Hambrick did not state on that trial that he had paid Showalter in full for the land?" says : "Yes, sir ; I am positive of it. The only man that swore in the trial that an amount had been paid was Mr. Turpin." The statement made by Turpin, referred to, was to the effect that he had been told that George Hambrick had paid Mr. Dowler $40, or that Mr. Dowler told him so ; but, be this as it may, it could not be evidence against Showalter, and is in conflict with George Hambrick's letter to Trigg, and his statement to F. A. Dowler. George E. Lester testified that, after he procured a title bond for this land from H. B. Showalter, he went to see George Hambrick, and told him of it, and said to him that, if he had any right or title to the land, he (Lester) would take it as a favor if he would let him know ; that he had not paid Mr. Showalter for the land, and if Hambrick had any title to the land he would not pay Showalter for it ; and that Hambrick showed him no evidence of title, but said : "Lester, I have got a proposition to make to you : If you will give me a little strip, 70 yards wide, you may have the balance ; and you can be an advantage to me, and I can to you."

We might further examine the evidence on behalf of the defendants in the court below (the appellants here) to show that George Hambrick had never paid for the land in question, but deem it unnecessary. The witnesses that we have referred to are not contradicted, and are corroborated by other witnesses, and by circumstances shown in the record. We are of

opinion that the evidence is conclusive that the land was never paid for, and that the plaintiffs in the court below were not entitled to a conveyance thereof, and the decree of the lower court is therefore erroneous. The decree will be reversed and annulled, and this court will enter such decree as the lower court should have entered, dismissing the bill, with costs to the appellants.